**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carmen Fernandez, | No. CV 07-2064-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Executive Management Services, Inc., | |
| Defendant. | |

Pending before the Court are Defendant's Motion for Summary Judgment (Doc. #41) and Plaintiff's Motion to Strike the Declarations of Gary Ackerman and Jose Omar "Eduardo" Banuelos (Doc. #50). The Court now rules on the Motions.

**I. BACKGROUND**

The following are the facts and inferences therefrom construed in the light most favorable to Plaintiff:

Plaintiff Carmen Fernandez began working for Mid-America Building Maintenance Inc. in August of 2005. (Plaintiff's Statement of Facts, Doc. #47, ¶7). Defendant Executive Management Services ("EMS") purchased Mid-America on or around November 1, 2005. (Defendant's Statement of Facts, Doc. #42, ¶2). After the purchase, Mid-America began operating as the Southwest division of EMS. (Id.). Gary Ackerman, the former owner of Mid-America, became EMS's Regional Vice President for the Southwest. (Id.).

While at Defendant EMS, Plaintiff worked as an Area Manager responsible for

1  supervising several employees and maintaining the cleanliness standards of the company at
2  several customer locations. (Id. at ¶9). She earned a bi-weekly salary at a rate of $30,000
3  a year. (Id.). Plaintiff reported to Mike Gramley, who was a Branch Manager for Defendant.
4  (Id. at ¶11). Mr. Gramley, in turn, reported to Mr. Ackerman. (Id.).

5  Mr. Gramley instructed Ms. Fernandez to report to work by 6:00 a.m. on May 1, 2006,
6  to begin training employees at one of Defendant's new client accounts. (Id. ¶14). Plaintiff
7  called Mr. Gramley to tell him that she would be late because her daughter was sick. (Doc.
8  #47 ¶14). She did not arrive to the site until between 6:30 a.m. and 7:00 a.m. (Id.).

9  Shortly after arriving at the site, Plaintiff told Mr. Gramley that she would need to
10 leave to take care of her daughter. (Doc. #42 ¶15). Mr. Gramley questioned her reason for
11 leaving work, suggesting that she really wanted to take off for "Mexican March Day." (Id.
12 ¶15). Plaintiff then told Mr. Gramley that she was not Mexican, but Cuban-American. (Doc.
13 #47 ¶15). Mr. Gramley replied, "Cuban-American, Mexican-American, you're all the same
14 piece of shit." (Id.).

15 Plaintiff then left the work site. As she was leaving, Mr. Gramley told her that if she
16 left, she should not bother returning to work. (Doc. #42 ¶16). Later that day, someone from
17 Defendant called Plaintiff to ask her to cover for someone else. (Doc. #42 ¶17; Doc. #47
18 ¶17).

19 The next day, May 2, Plaintiff called Kelly Bego, Defendant's Human Resources
20 Director, to report Mr. Gramley's conduct. (Doc. #42 ¶19). On May 5, Dave Bego,
21 Defendant's President, personally met with Plaintiff in Phoenix to discuss her complaint
22 about Mr. Gramley's conduct. (Id. ¶20). Mr. Bego took notes of Plaintiff's concerns during
23 their conversation. (Id. ¶21). In addition to discussing the May 1 incident, Plaintiff told Mr.
24 Bego that Mr. Ackerman had been violating federal immigration laws since before Defendant
25 bought Mid-America. (Doc. #47 ¶23).

26 At the conclusion of the meeting, Mr. Bego told Plaintiff that Defendant would
27 conduct a full investigation of her allegations. (Id. ¶23). He also told her that she did not
28 need to work during the pendency of the investigation, but she would continue to receive her

normal salary. (Id.). Mr. Bego also instructed Plaintiff not to contact any of her fellow employees or clients to discuss the investigation. (Id. ¶24).

Defendant took roughly 20 days to investigate Plaintiff's complaints. Defendant ultimately decided to terminate Mr. Gramley, although Defendant's investigation into Mr. Gramley's alleged racially inappropriate statements proved inconclusive. (Doc. #42 ¶27).

During the course of the investigation, several employees reported that Plaintiff had pressured them into loaning her money. (Id. ¶28). Five employees submitted written statements outlining Plaintiff's behavior. The employees reported that Plaintiff had threatened them with job loss or reduction in wages if they did not agree to loan her money. (Id.). In total, the employees claimed that Plaintiff had borrowed over $2000 from them against their wishes. (Id.). Plaintiff left a voicemail at Defendant's offices on May 18, 2006 requesting that Mr. Bego reduce her next paycheck by $700 to repay Arturo Mejia $500 and Alberto Guzman $200. (Id. ¶29).

Following the investigation, Defendant decided to terminate Plaintiff, effective May 26, 2006. (Id. ¶32). Mr. Bego drafted a letter to Plaintiff outlining the reasons for her termination. (Id. ¶33). He gave the following reasons: (1) Plaintiff had been inappropriately taking advantage of her supervisory position by coercing her subordinates into loaning her money; (2) Plaintiff had intimidated employees; (3) Plaintiff had been unavailable to clients and employees; (4) Plaintiff had contacted clients and employees during the investigation; and (5) Plaintiff had instructed employees not to use Defendant's automated time card system. (Id. ¶32).

Plaintiff filed a charge of discrimination with the EEOC against Defendant on August 21, 2006. (Doc. #47 ¶37). The EEOC issued its right to sue letter on August 8, 2007. (Doc. #47 ¶38).

**II. ANALYSIS AND CONCLUSION**

**A. Motion to Strike**

Defendant attached materials to its Reply in Support of Summary Judgment (Doc. #49). Specifically, Defendant attached the Declarations of Gary Ackerman, with exhibits,

and Jose Omar "Eduardo" Banuelos, with exhibits; an additional Declaration of David Bego; and additional portions of Plaintiff's deposition. (Doc. ##49-1 to 49-4). Plaintiff has moved to strike the Declarations of Mr. Ackerman and Mr. Banuelos. (Doc. #50). The Court will strike all the exhibits attached to the Reply, but for reasons other than those urged by Plaintiff.[1] The Court also will ignore all references to those exhibits found in the Reply.

Local Rule of Civil Procedure 56.1(a) requires the party moving for summary judgment to file a separate statement of facts with its motion. The non-moving party must then file a statement, separate from its memo, that specifically responds to each of the moving party's statements of fact and that sets forth any additional facts that make summary judgment inappropriate. L.R.Civ.P. 56.1(b). Local Rule 56.1 does not provide for a reply statement of facts or a response to the non-moving party's separate statement of facts.

The Local Rules do not contemplate attaching additional exhibits to replies in support of summary judgment[2] or filing a separate response to the non-moving party's statement of facts. "This is consistent with the moving party's need to show no genuine issue of material facts exists and that there is no need for a trier of fact to weigh conflicting evidence, assuming the non-moving party's evidence is true." *See, e.g., TIN Inc.*, 2008 WL 2323913 at *1. Defendant has provided no sufficient reason for deviating from the Local Rules in this case. Because Defendant improperly attached additional exhibits to its Reply, the Court will strike all the exhibits and attachments to the Reply.

**B. Motion for Summary Judgment**

**1. Legal Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to

---

[1] The Court does not reach the arguments for striking made by Plaintiff.

[2] Local Rule of Civil Procedure 7.2(e) provides that a reply shall not exceed eleven pages, exclusive of attachments; perhaps raising an inference that the Rule contemplates the filing of attachments. But Local Rule 7.2(e) is a general rule for all motions and memoranda and does not apply specifically to motions for summary judgment, which have different burdens of proof.

- 4 -

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

**2. Title VII and Section 1981 Retaliation**

Defendant has moved for summary judgment on all of Plaintiff's claims – discrimination, harassment, and retaliation. In her response, Plaintiff discusses only her retaliation claim. The Court therefore will deem all claims but her Title VII and section 1981 retaliation claims abandoned. *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)(holding the plaintiff abandoned her other two claims by not raising them in opposition to the defendant's motion for summary judgment); L.R.Civ.P. 7.2(j).

The Court applies the same legal standards to claims for employment discrimination

under section 1981 as to claims under Title VII. *Metoyer v. Chassman*, 504 F.3d 919, 934 (9th Cir. 2007); *Fonseca v. Sysco Food Servs. of Arizona*, 374 F.3d 840, 850 (9th Cir. 2004). To establish a prima facie case for retaliation, Plaintiff must prove: "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two." *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). If Plaintiff establishes her prima facie case, then the burden shifts to the Defendant to give a legitimate, non-retaliatory reason for the action. *Id*. If Defendant provides non-retaliatory reasons, Plaintiff must produce evidence demonstrating that the stated reasons were a pretext for retaliation. *Id*.

Plaintiff engaged in a protected activity when she called Kelly Bego, Defendant's Human Resources Director, on May 2, 2006 to complain about Mr. Gramley's alleged racist remarks. (Doc. #42 ¶19). During her interview with Dave Bego on May 5, 2006, Plaintiff engaged in further protected activity when she told him that she believed Hispanic employees received a dollar less per hour than white employees.[3] Plaintiff therefore has satisfied the first prong of her prima facie case. She also meets the second prong because her termination on May 26, 2006 obviously constitutes an adverse employment action.[4]

Defendant challenges whether Plaintiff can establish a link between her protected activities and her ultimate termination. Plaintiff's termination occurred within twenty-five and twenty-one days of her protected activities. "The causal link between a protected

---

[3] Plaintiff argues that telling Mr. Bego about Defendant's alleged hiring of illegal immigrants also constitutes protected activity under Title VII and section 1981. The Court would agree with Plaintiff, if, as she claims, she complained about disparate treatment of illegal immigrants. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 n.4 (9th Cir. 2004). But the paragraph of the Statement of Facts in Opposition to which Plaintiff cites (paragraph 22) on page 9 of her Opposition does not mention any unfair treatment of illegal immigrants. Plaintiff has not cited any cases holding that the mere reporting of the hiring of illegal immigrants is protected under Title VII or section 1981.

[4] The Court finds that Plaintiff's alleged May 1, 2006 termination cannot serve as an adverse employment action for her retaliation claim because it occurred before her protected activities.

activity and the alleged retaliatory action 'can be inferred from timing alone' when there is a close proximity between the two." *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004)(internal citations omitted); *see also Bell v. Clackamas County*, 341 F.3d 858, 865 (9th Cir. 2003)("Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases."). An employer's awareness of the plaintiff's protected activity also may support a causal link. *Id.* at 812 n.4. Given the short amount of time between Plaintiff's allegations of discrimination and her termination and Defendant's knowledge of her activities, the Court finds that she has met her prima facie burden of demonstrating an inference of causation.

Because Plaintiff has met her prima facie burden, the burden shifts to Defendant to articulate legitimate, non-retaliatory reasons for her termination. Mr. Bego claims that he decided to terminate Plaintiff after an investigation into her allegations revealed several problems with her management.[5] (Doc. #42 ¶¶28-30, 32).

During the course of the investigation, several of Plaintiff's subordinates reported that she had pressured them into loaning her money. (Id. ¶28 & Ex. E to Ex. 3, Declaration of David Bego ). The employees claimed that Plaintiff would threaten them with job loss or reduction of hours if they did not lend her money, which she never repaid. (Doc. #42 Ex. 3, Declaration of David Bego, ¶18). On May 26, 2006, Mr. Bego informed Plaintiff that he was terminating her for coercing her subordinates into lending her money and for intimidating employees; for being unavailable to clients and employees; for contacting clients and employees during the investigation contrary to his directive; and for instructing employees not to use the automated time card system. (Doc. #42 ¶¶32 & 33).

Plaintiff raises evidentiary objections to Mr. Bego's Declaration. Plaintiff argues that

---

[5]Mr. Bego cited the following reasons for terminating Plaintiff: (1) Plaintiff had been inappropriately taking advantage of her supervisory position by coercing her subordinates into loaning her money; (2) Plaintiff had intimidated employees; (3) Plaintiff had been unavailable to clients and employees; (4) Plaintiff had contacted clients and employees during the investigation; and (5) Plaintiff had instructed employees not to use Defendant's automated time card system. (Doc. #42 ¶32).

the five witness statements regarding Plaintiff's alleged coercion lack proper foundation. She further asserts that the statements of the five employees are not verified under oath and are inadmissible hearsay.

The Court finds that Defendant has offered sufficient foundation for the witness statements attached to Mr. Bego's Declaration. Mr. Bego initiated the investigation into Plaintiff's complaints and supervised the continuing investigation. Given his involvement, and as the President of Defendant, the Court finds that Mr. Bego had adequate personal knowledge to provide foundation for and authentication of the five witness statements.

Rule 56(e)(1) provides that a supporting affidavit must set out facts that would be admissible in evidence. Fed.R.Civ.P.56(e)(1). Plaintiff argues that the Court cannot consider the five witness statements because they constitute inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." F.R.E. 801(c). Because the witness statements are not in the form of Declarations, if they are offered for the truth of the matters asserted therein, then they are hearsay and must fall under an exception to the hearsay rule.

Defendant argues, and the Court agrees, that the statements are not offered for the truth of the matters asserted therein. What is relevant to the burden-shifting framework is not whether Plaintiff actually coerced her employees into lending her money; but, rather, whether numerous reports of coercion provided Mr. Bego with a legitimate, non-retaliatory reason for terminating her. Although the Court recognizes it is a close evidentiary call, the Court believes that the statements are really being offered to show their effect on Mr. Bego's decision-making process. The Court therefore finds that the five witness statements are not hearsay and are admissible.

Moreover, at the summary judgment stage, the Court does not "focus on the admissibility of the evidence's form. [The Court] instead focus[es] on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). The five employees could come to trial to testify regarding Plaintiff's alleged coercion and pressure. The topic

of their testimony would be relevant and admissible. They could even testify as to statements made by Plaintiff to them pursuant to Federal Rule of Evidence 801(d)(2). Because the witness statements could be presented in an admissible form at trial, if the case were to proceed to trial, the Court may consider the statements at the summary judgment stage. *Id.* at 1037 (citing *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992)(holding that affidavit could be considered on summary judgment despite hearsay and best evidence rule objections because the facts underlying the affidavit were of the type that would be admissible evidence, even though the affidavit itself might not be admissible)); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990)(hearsay evidence produced in an affidavit may be considered if the out-of-court declarant could later present the evidence through direct testimony)).

Defendant has met its burden of providing legitimate, non-retaliatory reasons for terminating Plaintiff. The burden therefore shifts to Plaintiff to provide evidence of pretext.

At least in the materials submitted by her to the Court, Plaintiff does not refute that she pressured some employees into lending her money. In Paragraph 28 of Defendant's Statement of Facts, Defendant states that, during the course of the investigation into Plaintiff's complaint, several employees reported that she pressured them into loaning her money by threatening them with job loss or reduction in wages. (Doc. #42 ¶28). Plaintiff flatly denies this paragraph and makes evidentiary objections to the paragraph, but never cites to any record evidence disputing Defendant's claims that she pressured subordinates into lending her money. Moreover, Plaintiff's undisputed call to Defendant requesting that it repay two of her subordinates supports the fact that loans occurred, if not coercion.[6]

In Paragraph 32 of Defendant's Statement of Facts, Defendant states that it concluded that Plaintiff had been inappropriately taking advantage of her position by coercing subordinates into lending her money, had intimidated other employees, had been unavailable

---

[6]The Court posits that a certain amount of coercion, albeit implied, always exists when a supervisor asks a subordinate for a loan.

to clients and employees, had contacted clients and employees during the investigation, and had instructed employees not to use the automated time card system. Other than claiming these reasons are pretextual, Plaintiff again does not cite to any record evidence refuting Defendant's claims of coercion.[7]

Despite not contradicting Defendant's claims of coercion, Plaintiff nonetheless argues that Defendant's stated reasons for terminating her were actually pretext for retaliation. To show pretext, Plaintiff can directly persuade the Court that a discriminatory reason more likely motivated Defendant or can indirectly show that the Defendant's proffered explanation is unworthy of belief. *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2004). If a plaintiff offers direct evidence of retaliatory motive, a triable issue as to the actual motivation of the employer exists even if the evidence is insubstantial. *Id*. If a plaintiff offers circumstantial evidence, however, the Court requires specific and substantial evidence of pretext to survive summary judgment. *Id*.

A plaintiff may establish a retaliation claim through a preponderance of the evidence (whether direct or circumstantial) that retaliation played a motivating factor in the termination. *Id*. at 1068. In order to rebut the defendant's legitimate reasons, the plaintiff must produce evidence in addition to the evidence that satisfied her prima facie burden. *Id*. at 1069. But the Court does not ignore the prima facie evidence at the pretext phase. *Id*.

Plaintiff argues the following as evidence of pretext: Mr. Ackerman's involvement in the investigation of her complaints; some of the employees providing the statements regarding her coercion were undocumented aliens; and Defendant credited the alleged witness statements against Ms. Fernandez, but ignored the statement of a "Maria" that supported her claims of discrimination.

Construing the facts in the light most favorable to Plaintiff, Plaintiff informed Mr. Bego that Mr. Ackerman had previously and continued to hire undocumented aliens. Mr.

---

[7]Plaintiff cites to Ex. A pp. 162, 163, and 422-435. But Exhibit A, excerpts from Plaintiff's deposition, does not attach pages 162 & 163 and pages 422-435 do not discuss the alleged coercion.

Bego nonetheless tasked Mr. Ackerman with leading the investigation into her complaints of discrimination. Plaintiff argues that Mr. Ackerman naturally had a bias toward Plaintiff because she had accused him of engaging in illegal conduct, and that his bias affected the investigation into her claims.

Evidence that personnel involved in the decision to terminate the employee had been accused of wrongdoing can serve as circumstantial evidence of pretext. *Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989)("[A] jury could infer retaliatory motivation from the evidence that the . . . personnel who participated in the decisions to lay off . . . were the very people whose actions had prompted the appellants' complaints."). Further, a biased subordinate's retaliatory motive can be imputed to the employer if the subordinate influenced, affected, or was involved in the adverse employment decision. *Poland v. Chertoff*, 494 F.3d 1174, 1183 (9th Cir. 2007).

The Court agrees that Mr. Ackerman might have a certain amount of bias against Plaintiff. The Court also finds that Mr. Ackerman, through his conduct of the investigation into Plaintiff's complaints, could have influenced Mr. Bego's decision to terminate her. Mr. Ackerman's retaliatory motive therefore could be imputed to Mr. Bego. The Court does not think, however, that any bias of the employees who offered witness statements can be imputed to Mr. Bego because the employees were not sufficiently involved in the decision to terminate her.

According to Defendant, its investigation proved inconclusive regarding whether Mr. Gramley actually made the discriminatory comments to Plaintiff. Plaintiff asserts that Defendant ignored the witness statement of "Maria" that corroborated Plaintiff's's version of the events, despite relying on witness statements against Plaintiff in terminating her. She argues that Defendant's failure to credit "Maria's" statement demonstrates pretext for retaliation. The Court disagrees because it finds the two issues unrelated.

Although Plaintiff does not have strong circumstantial evidence of pretext, given the close proximity in time between her complaints and termination and Mr. Ackerman's involvement in the investigation into her complaints, the Court finds that Plaintiff has

introduced evidence specific and substantial enough to meet her burden at the summary judgment stage of creating an issue of fact regarding pretext. Even though the jury might very well find that Plaintiff has failed to prove retaliation, the Court should not preclude the jury from reaching the issue. *Miller*, 885 F.2d at 505-06.

Accordingly,

IT IS ORDERED Granting the Motion to Strike the Declarations of Mr. Ackerman and Mr. Banuelos Attached in Support of Defendant's Reply Memorandum in Support of its Motion for Summary Judgment (Doc. #50) for the reasons set out in this Order.from the Reply. The Clerk shall strike the exhibits to the Reply (Doc. #49).

IT IS FURTHER ORDERED DENYING Defendant's Motion for Summary Judgment (Doc. #41).

DATED this 1st day of September, 2009.

James A. Teilborg
United States District Judge